VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

Docket Nos. 25-ENV-00030
25-ENV-00031
25-ENV-00032



---

| | |
|---|---|
| Bellows Falls Hydroelectric Project<br>    Water Quality Cert. Appeal, et al. | DECISION ON MOTIONS |

---

These coordinated matters involve appeals by Connecticut River Conservancy (CRC), Vermont Natural Resources Council (VNRC), Conservation Law Foundation (CLF), and American Whitewater (AW) (collectively, Appellants), from water quality certifications (WQCs) issued by the Vermont Agency of Natural Resources (ANR) to Applicant/Appellee, Great River Hydro, LLC (Applicant) for hydroelectric projects located on the Connecticut River in Bellows Falls, Vernon and Wilder, Vermont, respectively. ANR issued each of the relevant certifications with conditions on April 16, 2025, and those certifications were timely appealed on May 16, 2025.

On June 5, 2025, Appellants filed a Statement of Questions consisting of eighteen questions in each of the appeal dockets. Applicant has moved to dismiss all Questions before the Court either pursuant to V.R.C.P. 12(b)(1) for lack of subject matter jurisdiction, or pursuant to V.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1] ANR supports Applicant's motion with respect to Questions 1 and 2 and takes no position with respect to the remaining aspects of the motion. Appellants oppose the motion and have moved to amend their Statement of Questions, which Applicant opposes.

## Legal Standard

V.R.C.P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. When reviewing such a motion, this Court accepts all uncontroverted factual allegations as true and construes them in the light most favorable to the nonmoving party. Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245. Standing is a "necessary component to this Court's subject matter jurisdiction." Bischoff v. Bletz, 2008 VT 16, ¶ 15, 183 Vt. 235.

---

[1] In the alternative, Applicant requests that the Court order Appellants to clarify their Questions 3–18 as authorized by V.R.E.C.P. 5(f).

V.R.C.P. 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. Such motions are notably "disfavored" and "rarely granted." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 5. A Rule 12(b)(6) motion may not be granted "unless it is beyond doubt that there are no facts or circumstances that would entitle the nonmoving party to relief." Id. (internal quotation and citation omitted). In evaluating a motion under V.R.C.P. 12(b)(6), we take the factual allegations asserted by the nonmovant as true, keeping in mind that the purpose of a V.R.C.P. 12(b)(6) motion is to test the law of the claim, not the facts that might support it. Richards v. Town of Norwich, 169 Vt. 44, 48–49 (1999); Powers v. Off. of Child Support, 173 Vt. 390, 395 (2002).

## Discussion

### I. Applicant's Motion to Dismiss Questions 1 & 2

Applicant seeks dismissal of Questions 1 and 2 pursuant to both V.R.C.P. 12(b)(1) and V.R.C.P. 12(b)(6). Under Rule 12(b)(1), it asserts that Appellants lack standing to raise the issues therein and that Questions 1 and 2 are inconsistent with this Court's de novo review. Under Rule 12(b)(6), Applicant asserts that the Questions fail to state a claim on which relief may be granted. Given the centrality of Questions 1 and 2 to Appellants' appeal and their interrelated nature, the Court addresses them together.

Question 1 asks: "Whether the WQCs apply the incorrect 'reasonable assurance' standard rather than the requisite 'will comply' with VWQS standard . . . or 'assure that any applicant . . . will comply with' VWQS and appropriate requirements of state law standard . . . required by CWA [statutory and regulatory citations omitted]." Statement of Questions (filed June 5, 2025).

Question 2, as originally submitted, asks: "Whether the WQCs fail to properly consider and reflect public comment because public comment was reviewed and addressed under the incorrect 'reasonable assurance' standard." Id. Appellants have moved to amend Question 2 to ask: "Whether the WQCs fail to properly consider and reflect public comment . . . because public comment was reviewed and addressed under the incorrect 'reasonable assurance' standard rather than the requisite 'will comply' with VWQS standard . . . or 'assure that the applicant . . . will comply with VWQS and appropriate requirements of state law standard . . . required by CWA [statutory and regulatory citations omitted]." Revised Statement of Questions (filed Oct. 10, 2025).

The Court first addresses Applicant's motion to dismiss these Questions on standing grounds. This aspect of Applicant's motion focuses on whether Appellants raised the issues therein when submitting public comments to ANR below.

Any person aggrieved may appeal an act or decision of ANR. 10 V.S.A. § 8504(a). A "person aggrieved" is one "who alleges an injury to a particularized interest protected by the provisions of law listed in section 8503 of [Title 10], attributable to an act or decision by ... the Secretary [of ANR] ... that can be redressed by the Environmental Division ...." 10 V.S.A. § 8502(7). When a party's standing is challenged, it must demonstrate that it has standing to appeal to this Court. See In re Silver Birch Props., LLC, No. 22-ENV-00070, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Mar. 29, 2023) (Durkin, J.) ("While the Court initially accords persons who enter a timely appearance party status, if challenged, the party must demonstrate, at a minimum, that they are vested with constitutional standing to remain as a party before the Court in the pending appeal.") (citation omitted).

In addition to the general standing requirements, a would-be appellant of an ANR decision must have "submitted to the Secretary a written comment during the comment period or an oral comment at the public meeting conducted by the Secretary." 10 V.S.A. § 8504(d)(2)(A). An appellant "may only appeal issues related to the person's comment to the Secretary." Id. "To be sufficient, for the purposes of appeal, a comment to the Secretary shall identify each reasonably ascertainable issue with enough particularity so that a meaningful response can be provided." 10 V.S.A § 8504(d)(2)(A)(i). The appellant must also identify each comment submitted to the Secretary that identifies or relates to the issue raised in a subsequent appeal. 10 V.S.A. § 8504(d)(2)(A)(ii). Further, when interpreting § 8504(d)(2)(A), this Court has adopted the principle applicable to Statements of Questions which states that issues intrinsic to the questions in a Statement of Questions may be preserved for review on appeal. In re Champlain Parkway SW Discharge Permit, No. 76-7-18 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. April 29, 2019) (Durkin, J.) (citing In re Jolley Assocs., 2009 VT 132, ¶9).

A party moving to dismiss an appeal, or issue within an appeal, pursuant to § 8504(d)(2)(A) has the burden of proving that the comment requirements were not satisfied. 10 V.S.A. § 8504(d)(2)(A)(iii). Thus, Applicant here has the burden of demonstrating that dismissal is warranted under § 8504(d)(2)(A).

The purposes of § 8504(d)(2)(A) are to: (1) "require participation in the permitting process of the Department of Environmental Conservation (DEC) and identification of concerns about an application early in that process so that DEC and the applicant have an opportunity to address those concerns where possible before a permit becomes final and subject to appeal" and (2) "require that an issue raised on appeal be identified or related to an issue identified in a comment to the Secretary while guarding against an overly technical approach to the preservation of issues for the purpose of

appeal when interpreting whether an appeal satisfies [the statutory requirement]." 2015, No. 150 (Adj. Sess.), § 5b (PURPOSE).[2]

With these provisions and purposes in mind, we turn to the comments that Appellants submitted to ANR below. The Court will also evaluate whether Appellants below provided comments that intrinsically raised the issues within Questions 1 and 2.

Appellants did not identify any comments they submitted to ANR in support of any issue they seek to raise on appeal as required by 10 V.S.A. § 8504(d)(2)(A)(ii) in their Notice(s) of Appeal or their Statement(s) of Questions.[3] Instead, Appellants' Notice(s) of Appeal in each docket merely state that "[e]ach Appellant submitted comments on the proposed Water Quality Certification that is the subject of this appeal." Those comments, comprised of over 400 pages, have been submitted to the Court as Exhibits 4-8 of the pending motion to dismiss.

In their response to the pending motion to dismiss with respect to Questions 1 and 2, Appellants point to Exhibit 4 (pages 5 and 44), Exhibit 5 (pages 2–3), Exhibit 6 (page 5), Exhibit 7 (page 4) and Exhibit 8 (pages 2–3) as comments identifying or related to the issues in Questions 1 and 2. They also point to Comment 4/Response 4 in Exhibits 1 through 3 of their Motion to Vacate Certification and for Judgment on Questions 1 and 2, addressed by separate Entry Order, as support for their argument that the issues raised by Questions 1 and 2 were identified in, or are related to, comments they submitted to ANR.[4] The Court will therefore analyze these comments and responses under § 8504(d)(2)(A), as relevant.

As set forth above, Questions 1 and 2 effectively ask whether the certifications apply the "incorrect 'reasonable assurance' standard rather than the requisite 'will comply' with VWQS standard" and "fail to properly consider and reflect public comment because public comment was reviewed and addressed under the incorrect 'reasonable assurance' standard" (rather than the so-called "will comply" standard). Both Questions 1 and 2 focus on ANR's alleged use of an "incorrect

---

[2] This Court has looked to this purpose statement of § 8504 in interpreting cases concerning its application in at least two prior cases. See Champlain Parkway, No. 76-7-18 Vtec, slip op. at 11 (Apr. 29, 2019) (Durkin, J.); In re City of Rutland WWTF NPDES, No. 22-ENV-00054, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Jul. 28, 2023) (Walsh, J.).

[3] The Court notes that despite § 8504(d)(2)(ii)'s requirement to specify the comments submitted to ANR that identify or relate to an issue raised on appeal, it does not mandate they be identified in any particular location. Thus, the Court will not here ascribe fault to the lack of citation in either document, though either filing would be a logical location to so identify, most notably a statement of questions.

[4] Exhibits 1 through 3 are comprised of ANR's Response(s) to Public Comments for the Wilder, Bellows Falls and Vernon Hydroelectric Projects, respectively.

'reasonable assurance' standard" in connection with its administration and issuance of the certifications.

Exhibit 4, page 5, does not identify an issue with ANR's use of the reasonable assurance standard. Instead, it quotes language from §29A-206 of the Vermont Water Quality Standards (VWQS) that includes that same reasonable assurance standard and states that "CRC contends that both GRH's application and the draft WQC does not in fact provide reasonable assurance." Thus, rather than challenge the reasonable assurance standard, this comment implicitly suggests that the standard is correct but has not been met. This comment does not identify the issue of the incorrect reasonable assurance standard with enough particularity so that a meaningful response can be provided. Similarly, Exhibit 4, page 44, does not identify the "incorrect 'reasonable assurance' standard" and, to the extent that it references the "will comply" language of 33 U.S.C. § 1341, the comment does not identify the issue of the allegedly incompatible standards with enough particularity so that a meaningful response can be provided.[5]

Further, nothing within Exhibit 5's cited pages 2 and 3 identifies the issues within Questions 1 or 2 sufficiently. Exhibit 5 contains general comments regarding the Bellows Falls project, none of which identify an issue with an allegedly incorrect regulatory standard. Page 3 contains a description of the requirements of Clean Water Act § 401(a) and quotes the § 401(a) "will comply" language. It goes on to both quote and summarize the language of § 401(d). The cited language contains no reference to the reasonable assurance standard or puts ANR or the Applicant on notice regarding Appellants' alleged concern with the application of that standard.[6] On the contrary, the Appellants' reference to § 401(d)'s requirement that a certification contain conditions "'to assure any applicant' will comply with the applicable water quality requirements," is substantially similar to the "reasonable assurance of compliance" standard, again suggesting Appellants' implicit support for that standard. Thus, Appellants' passing references to § 401(a) are insufficient to meet the requirements of § 8504(d)(2)(A)(i) because they fail to identify the issues that Appellants attempt to raise in Questions 1 and 2 with "enough particularity so that a meaningful response can be provided." Id. at § 8504(d)(2)(A)(i).

---

[5] Certainly, nothing on page 44 identified a concern with the applicable regulatory standard with sufficient particularity to allow ANR and the Applicant an opportunity to respond before the certification became final and subject to appeal.

[6] Indeed, there is no reference to "reasonable assurance" anywhere in Exhibit 5.

Appellants next cite Exhibit 6, page 5, which also fails to sufficiently raise the issues in Questions 1 and 2. In relevant part the cited language is virtually identical to cited language in Exhibit 4 addressed above, and it fails to meet the requirements of § 8504(d)(2)(A) for the same reasons.[7]

Exhibit 7, page 4, similarly does not suffice to meet the requirements of § 8504(d)(2)(A). While the cited language includes the words "will comply," it fails to identify with sufficient particularity any assertion that the "reasonable assurance standard" is incorrect (or at odds with the "will comply" language) to allow ANR and/or Applicant to address the concern before the certifications became final and appeals were taken.

Next, Exhibit 8, pages 2–3, resembles Exhibit 5's cited language, and it also fails to meet the requirements of § 8504(d)(2)(A) for the same reasons discussed above. The words "reasonable assurance" do not appear anywhere in Exhibit 8 and the comments set forth therein are insufficient to satisfy the "particularity" element of § 8504(d)(2)(A)(i) as it relates to the applicable regulatory standard.

Finally, Appellants point to Comment 4/Response 4 of each of the relevant responsiveness summaries in support of their compliance with § 8504(d)(2)(A) with respect to Questions 1 and 2.

Comment 4/Response 4 provide:

> Comment 4: Comments addressed the scope of the Department's review in issuing water quality certifications.
>
> Response 4: The Department clearly defined the appropriate scope of certification and included conditions that reflect that scope. To issue a water quality certification under Section 401 of the federal Clean Water Act, the Department must "evaluate whether the activity will comply with applicable water quality requirements." 40 C.F.R. § 121.3. The scope of certification is explicitly stated as the first finding in the analysis section of the Certification (Finding 451). The Department's review of the activity is further demonstrated by both the analysis and the inclusion of conditions that address the activity as a whole. For example, the Certification includes conditions related to water level management in the impoundment and provisions related to fish passage.

---

[7] The Court notes that Exhibit 6, page 78, contains an uncited reference by Appellants' consultant, Princeton Hydro, LLC, to the reasonable assurance standard. Specifically, the consultant states that "a water quality certification shall not be issued unless the applicant demonstrates … 2) there is reasonable assurance that a discharge will not result in a violation of the water quality rules, including water quality criteria and the Antidegradation policy." (Emphasis added) Thus, it appears as though one of Appellants' consultants here expressly acknowledges the reasonable assurances standard and does not object to or raise any other concern about it.

See Appellants' Exhibits 1-3 to Motion to Vacate Certification and For Judgment on Questions 1 and 2.

In response to the pending motion/Appellants' offer, ANR observes that Appellants' "scope of review" comments focused not on the issues raised in Questions 1 and 2, but instead on another issue — "the scope of a State or tribe's review of a proposed project under § 401" and the imposition of conditions related to the impacts of the "activity as a whole" that is associated with the discharge. See PUD No. 1 of Jefferson County v. Washington Dept. of Ecology, 511 U.S., 700, 712 (1994). The Court agrees. See Appellants' Exhibit 5, at 3 (referencing scope of state or tribe review), 19 (requesting findings be clarified to include full scope of project area), 22 ("Addressing the water quality impacts from a dam requires a broader look than the nature of a discharge from a powerhouse."); Exhibit 8, at 3 (same as Exhibit 5, at 3, above), 10–11 (commenting that ANR was well within scope of authority to address impacts from Wilder Dam), 19 (same as Exhibit 5, Page 22). These comments, some cited by Appellants and some reviewed by the Court, concern the scope of ANR's certification review authority, including its authority to impose conditions addressing the water quality related impacts of the "activity as a whole," and do not raise the issue of the proper regulatory standard, let alone raise that issue with particularity.

For all these reasons, the Court concludes that Appellants did not submit comments that explicitly addressed the issues raised in Questions 1 and 2 below.

Despite this, Appellants argue that even if they did not submit sufficient comments that identified the issues set forth in Questions 1 and 2 and/or raise explicit concerns with the "reasonable assurance" standard, as required by § 8504(d)(2)(A), the application of the "will comply standard" referenced in their comments is clearly related to and intrinsic to the entirety of their comments. They state that their "comments are all focused on the fact that the certifications fail to ensure the Projects will comply with the VWQS and relevant state law. Applying the correct legal standard in making the compliance determination is intrinsic to these comments." Id.

In support of their position, Appellants cite to Champlain Parkway. No. 76-7-18 Vtec (Apr. 29, 2019) (Durkin, J.). In Champlain Parkway, the City of Burlington challenged a question on appeal pursuant to 10 V.S.A. § 8504(d)(2)(A), arguing that it did not fit within the scope of the appellant's comments to ANR below. Id. at 9-10. The question on appeal addressed which iteration of the relevant stormwater regulations applied to the project at issue. Id. The comment appellant submitted to ANR asserted that the City's application for a stormwater renewal permit should be treated as a new application and the materials accompanying the application did not demonstrate compliance with

the newer iteration of the stormwater regulations. Id. at 10. This Court concluded that the issue of which version of the regulations applied was "intrinsic" to the comment submitted below because the comment asserted the applicability of the newer regulations to the renewal application. Id. at 11 ("Implicit in this is the question of whether the [r]enewal [p]ermit needs to comply with the [newer regulations] at all."). Importantly, ANR's response to the comment had "discussed the issue of which version of the [regulations] applies." Id. Given the facts presented in that case, it was clear that ANR could, and in fact did, respond to the issue raised on appeal and that appellant complied with § 8504(d)(2)(A)(i). Id.

This Court has since reiterated this analysis of § 8504(d)(2)(A). See In re City of Rutland WWTF NPDES, No. 22-ENV-00054, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Jul. 28, 2023) (Walsh, J.) (citing Champlain Parkway, No. 76-7-18 Vtec (Apr. 29, 2019) (Durkin, J.)). In the Rutland WWTF case, the Court acknowledged that it has "adopted the principle applicable to Statements of Questions which states that issues intrinsic to the questions in a Statement of Questions may be preserved for review on appeal." Id. (citation omitted). Notably, the Court reviewed the comments submitted to ANR below and found, in relevant part, that "ANR [had] responded to the comment, and referred to additional responses." Id. The Court specifically found that ANR was "further aware of VNRC's position … as addressed by its responses to comments cited in its response to VNRC's comment." Id. Thus, the Court concluded that dismissal of certain questions as non-compliant with § 8504(d)(2)(A) was not warranted. Id. at 7.

Both Champlain Parkway and Rutland WWTF rely in part upon the legislative purpose(s) of § 8504, set forth in 2015, No. 150 (Adj. Sess.), §5b, as discussed above. In amending § 8504, the Legislature intended to both avoid an "overly technical approach to the preservation of issues" and to identify "concerns about an application early" in the process below to provide the applicant and ANR "an opportunity to address those concerns where possible" before a final permit is issued. Neither Champlain Parkway nor Rutland WWTF stand for the principle that the Court is not bound by technical compliance with § 8504(d)(2)(A). Rather, in interpreting whether an issue raised on appeal satisfies the comment requirements of § 8504(d)(2)(A), those cases counsel striking a balance between the statute's dual purposes. This would allow issues to be raised on appeal that are "intrinsic to" or "implicit in" a comment to ANR below, most notably when ANR did in fact address the intrinsically raised issues in a manner that demonstrates that parties were sufficiently on notice of the underlying issue in the proceedings below and had an opportunity to address them prior to issuing a final permit.

Here, Appellants' comments cannot be deemed to have "intrinsically" or "implicitly" raised the issues within Questions 1 and 2.[8] Although Appellants' comments contain references to the "will comply" standard, those same comments also neutrally, if not somewhat favorably, reference the "reasonable assurance of compliance" standard. There is no challenge to ANR's use of the reasonable assurance standard, like that contained in Questions 1 and 2, that is reasonably implied therein. Indeed, Appellants and ANR both reference the "will comply" and "reasonable assurance" standards at various times in their comments and responses thereto. This appears to be consistent with the language of Clean Water Act § 401 itself, which employs the "will comply" language in subsections (a)(1) and (d), but also expressly references "reasonable assurance" in subsections (a)(3) and (a)(4).[9]

Put succinctly, the comments that Appellants submitted to ANR referencing the "will comply" standard did not directly or indirectly put ANR or the Applicant on early notice that Appellants sought to challenge the applicable regulatory standard or that Appellants believed "reasonable assurance of compliance" was an "incorrect" standard, as referenced in Questions 1 and 2. This is further evidenced by ANR's responses to Appellants' comments, which, unlike the facts presented in Champlain Parkway or Rutland WWTF, do not indicate that ANR was aware of and had a meaningful opportunity to respond to the "crux of the Questions before the Court." See Rutland WWTF, No. 22-ENV-00054, slip op. at 6 (July 28, 2023) (Walsh, J.). Thus, even reviewing the comments for intrinsic issues, Appellants did not identify concerns regarding the so-called reasonable assurance standard with any particularity and instead appear to have (directly and indirectly) recognized the standard.

This interpretation of the comments within the context of § 8504 attempts to balance the dual purposes of the statute. Overall, Appellants had notice of the draft certifications and the language contained therein, as well as the language of the VWQS themselves.[10] Thus, the alleged dispute with respect to the reasonable assurance standard was ascertainable at the time Appellants provided

---

[8] As the Court has set forth above, the comments do not explicitly raise these issues.

[9] While the Court makes no conclusion as to the merits of the dispute between the standards herein, it is notable that these uses appear consistent with the U.S. Environmental Protection Agency's (EPA) use of the two terms and general treatment of the will comply and reasonable assurance standards as functionally equivalent, even though it states that the "will comply" standard is more "loyal" to the language of § 401. Specifically, it states that "[t]he Agency has no theoretical or empirical basis to conclude that the language in the final [2020] rule will materially change the way in which certifying authorities, including the EPA, process certification requests, as long as certifying authorities act in good faith and in accordance with CWA section 401." 2020 Rule, 85 FR 42278.

[10] VWQS §29A-206(b) provides in part: "A water quality certification shall not be issued unless the applicant demonstrates all of the following: … (B)(2) There is reasonable assurance that the discharge will not result in a violation of these rules, including any applicable water quality criteria and the Antidegradation policy articulated in these rules."

comments to ANR.  Appellants, a majority of which were represented by counsel during the comment period, did not comment specifically or promptly regarding this alleged dispute, either explicitly or implicitly/intrinsically.  By failing to take the step of identifying and articulating their concerns regarding the reasonable assurance standard early in the process and with sufficient particularity, thereby allowing a meaningful response by ANR, Appellants are precluded from appealing the issues raised in Questions 1 and 2 now.

In their effort to avoid dismissal of Questions 1 and 2, Appellants contend that any deficiency in their comments is excusable under 10 V.S.A. § 8504(d)(2)(B).  They argue that ANR's reliance on the reasonable assurance standard "rendered this process [before ANR] defective," thereby excusing any obligation to comment on the regulatory standard.[11]  They assert that curtailing or limiting Appellants' right to raise Questions 1 and 2 based on their failure to comment on the regulatory standard issue would result in "manifest injustice."  See 10 V.S.A. § 8504(d)(2)(B)(iv).  Moreover, they argue that ANR's use of the reasonable assurance standard had the effect of voiding the entire certification process, creating a "legal nullity" and depriving the Court of subject matter jurisdiction.

With respect to their assertion of a "legal nullity," Appellants contend that ANR, in allegedly applying the incorrect "standard of review" (i.e., "reasonable assurance of compliance" rather than "will comply") acted outside of its statutory authority and, as a result, its actions are void and we are without subject matter jurisdiction.  In support of this contention, Appellants cite to Vermont Dept. of Pub. Serv. v. Massachusetts Mun. Wholesale Elec. Co., 151 Vt. 73 (1988) (MMWEC), In re Torres, 154 Vt. 233 (1990), and In re The Intervale Ctr., Inc., No. 89-5-08 Vtec (Vt. Super. Ct. Envtl. Div. Feb. 24, 2009) (Durkin, J.), all of which generally stand for the proposition (more or less) that where a public body or other tribunal exceeds or acts outside of its statutory authority, the extra-statutory action is void (and, in certain instances, can have the effect of depriving a reviewing court of subject matter jurisdiction).

This argument is without merit.  First, and most importantly, for all the reasons set forth above, a dispute regarding the standard of review should have been apparent to Appellants at the time of public comment.  Appellants did not comment on their alleged dispute.  Appellants cannot unilaterally declare ANR's use or potential use of the reasonable assurance standard a legal nullity and simply decline to comment on it.  If Appellants believed that application of the reasonable assurance standard was a "legal nullity" that would render all other actions void, Appellants had a statutory

---

[11]  This assertion is also raised within Appellants' motion to vacate, addressed separately by the Court.

obligation to identify that issue with particularity so that ANR could respond. None of the cases cited abrogate Appellants' obligations under § 8504(d)(2)(A) as Appellants argue.

Further, putting aside that ANR denies that the "will comply" and "reasonable assurance" standards differ at all, or that it applied the incorrect standard, a critical distinction exists between ANR arguably applying the wrong regulatory standard and acting entirely outside of its statutory authority, rendering the entire permitting action null and void. No party disputes that ANR has the authority to issue water quality certifications and to condition those certifications in accordance with § 401(d) to meet the requirements of the VWQS.[12] This authority clearly distinguishes the present appeal from the Intervale Center case, where this Court concluded that the Agency of Agriculture did not have authority to issue land use permits or to otherwise condition its approval of the structure at issue there. See No. 89-5-08 Vtec (Feb. 24, 2009) (Durkin, J.) It is not reasonably disputed that ANR had statutory authority to approve the certifications with conditions.

Likewise, both MMWEC and Torres are not helpful to Appellants. First, in MMWEC, the Vermont Supreme Court concluded that the contracting municipalities exceeded their delegated municipal legislative authority by entering a contract that bartered away and/or restricted the exercise of the municipalities' legislative or police powers and, therefore, the underlying contract was *ultra vires* and *void ab inito*. MMWEC, 151 Vt. at 81-82. In Torres, the Vermont Supreme Court held that notice and hearing requirements for an application to a zoning board were mandatory and jurisdictional and that "failure to adhere to these requirements renders the action taken null and void." 154 Vt. 233, 236 (1990). The present circumstances bear no resemblance to either MMWEC or Torres. No unlawful delegation of authority by ANR has occurred in connection with the certifications, nor is any such delegation alleged, and there is no issue in this case regarding the notice provided by ANR on the draft certifications, or its solicitation of comments on those drafts. ANR did not act outside of its authority in this regard and Appellants' "legal nullity" argument fails.

Finally, granting dismissal of Appellants' Questions 1 and 2 will not result in a manifest injustice as contemplated by 10 V.S.A. § 8504(d)(2)(B)(iv). Appellants fully participated in the certification process below, receiving notice of the draft certifications and commenting extensively thereon. Further, to request party status based on a procedural defect or manifest injustice requires filing a motion in the Environmental Division within the time to file a statement of questions. 10

---

[12] Notably, Appellants do not state anywhere in their filings with any specificity whatsoever how the certification review process or its outcome would be different if ANR were to apply the regulatory standard that they prefer.

V.S.A. § 8504(d)(2)(B); V.R.E.C.P. 5(d)(2). "Failing to file a motion for party status in an appeal pursuant to § 8504(d)(2)(B) is cause for dismissal." In re Verizon Wireless Barton Act 250 Permit, No. 6-1-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Feb. 2, 2010) (Durkin, J.) (internal citations omitted). No such motion was filed in this case nor is this assertion (i.e., manifest injustice) raised anywhere in Appellants' multiple Notices of Appeal or Statements of Questions. Thus, their assertions under this provision must be precluded.

Even if this were not the case, the Court is not aware of any other condition that would result in "manifest injustice" if Appellants' right to raise Questions 1 and 2 is disallowed. See 10 V.S.A. § 8504(d)(2)(B)(iv); In re Appeal of MDY Taxes, Inc., 2015 VT 65, ¶ 15 ("[T]his Court has not yet had the opportunity to address what might constitute 'manifest injustice' . . . When we have addressed the "manifest injustice" standard in other contexts we have recognized that it is an exacting and strict standard."). Despite the lack of clear case law on what constitutes a "manifest injustice," our review of the instances in which the term has arisen in Vermont case law indicates that manifest injustice presents extraordinary circumstances where some mistake of fact or law will cause a significant harm or loss of rights to a party if not remedied. See In re Granville Manufacturing Co., Inc., No. 2-1-11 Vtec, slip op. at 11 (Vt. Envtl. Ct. July 1, 2011) (Durkin, J.) (addressing the lack of clear definition of "manifest injustice").

Applying the manifest injustice standard strictly, as we must, this case does not present extraordinary circumstances where some mistake of law or fact will result in significant harm to Appellants if not remedied. As noted above, Appellants had ample opportunity to raise the issue of the regulatory standard with ANR during the extensive public comment period in which they participated. They did not avail themselves of that opportunity. Further, Appellants have not stated with any specificity how the certification review process or its outcome would be different if ANR were to strictly apply the "will comply" regulatory standard that they prefer. In the absence of this information, no factual or legal basis exists to conclude that manifest injustice will occur if Appellants' Questions 1 and 2 are dismissed. Thus, § 8504(d)(2)(B)(iv) does not present grounds for Appellants to raise the issues set forth in Questions 1 and 2.

For all these reasons, the Court concludes that Appellants failed to comment on the issues presented in Questions 1 and 2 such that they are precluded from raising these Questions on appeal as set forth in 10 V.S.A. § 8504(d)(2)(A). Thus, both Questions must be **DISMISSED** as outside the scope of this Court's subject matter jurisdiction.

Finally, while the Court concludes that Questions 1 and 2 must be dismissed for the reasons above, it agrees with the Applicant and ANR that Questions 1 and 2 should alternatively be dismissed because those questions are premised on an incorrect standard of review. As stated, Questions 1 and 2 focus on alleged failings of the Agency and the certification process below.

This Court hears this appeal de novo. See V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h). As such, we hear the case "as though no action whatever has been held prior thereto." Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989). "[Q]uestions related to alleged procedural or evidentiary shortcomings of ANR below have no bearing on the final disposition of the case." Rutland WWTF, No. 22-ENV-00054, slip op. at 2 (July 28, 2023) (Walsh, J.).

To the extent that Questions 1 and 2 raise issues regarding the below process, they are not properly before the Court.[13] Given Questions 1 and 2's focus on the certifications issued by ANR and the process associated therewith, those Questions do not comport with our de novo hearing standard.[14]

For all of the foregoing reasons, Appellants' Questions 1 and 2 are **DISMISSED** pursuant to V.R.C.P. 12(b)(1) and for failure to comport with this Court's de novo review standard. Applicant's motion to dismiss those questions pursuant to V.R.C.P. 12(b)(6) is therefore **MOOT**.

## II.     Questions 3–10, 12, 14, 16–18

Applicant argues in a series of footnotes in its motion to dismiss that Appellants have also failed to comply with 10 V.S.A. § 8504(d)(2)(A)(ii) with respect to Questions 3 through 10, 12, 14, and 16 through 18 because they have not identified in this appeal which of their comments submitted below support those Questions. See 10 V.S.A. § 8504(d)(2)(A)(ii) ("The appellant shall identify each comment that the appellant submitted to … [ANR] that identifies or relates to an issue raised in his or her appeal"). Applicant suggests that dismissal may be warranted under V.R.C.P. 12(b)(1) on this basis. However, Applicant also indicates that it has identified "on its own reconnaissance" comments by Appellants that may relate to the questions raised in the Statement of Questions.

First, 10 V.S.A § 8504(d)(2)(A)(ii) does not specify how and when an appellant is required to identify each comment submitted to ANR. Further, and most importantly, Applicant concedes that

---

[13] Appellants' proposed amendment to Question 2 does not change this result. Nor does the proposed amendment alter the fact that Appellants have failed to properly comply with § 8504(d)(2)(A) by failing to raise, explicitly or intrinsically, the contents of Question 2 below. Therefore, Appellants' motion to amend Question 2 is **DENIED** as futile. Colby v. Umbrella, Inc., 2008 VT 20, ¶ 4.

[14] In reaching this conclusion, the Court notes that Appellants are free to advocate for what they believe to be the appropriate regulatory standard(s) in the context of the Court's de novo hearing on any issues properly raised by the Statement of Questions.

Appellants made comments that it believes "may relate" to the questions raised and ANR has not asserted an absence of comments related to the issues raised. Applicant, as movant, has the burden of proving that this requirement has not been met. 10 V.S.A. § 8504(d)(2)(A)(iii). The Court **DENIES** Applicant's motion to dismiss Questions 3 through 10, 12, 14, and 16 through 18 pursuant to V.R.C.P. 12(b)(1) for failure to identify each comment that relates thereto.[15]

### III. Appellants' Motion to Amend Statement of Questions

Appellants filed their original Statement of Questions on June 5, 2025. Thereafter, on October 10, 2025, Appellants moved to amend their Statement of Questions in response to the Applicant's motion to dismiss. Applicant opposes the motion, arguing that the proposed amendments fail to address various perceived shortcomings in the original Statement of Questions.

We may grant a motion to amend a Statement of Questions pursuant to V.R.E.C.P. 5(f). As with motions to amend complaints under V.R.C.P. 15, we generally take a liberal view in reviewing motions to amend Statements of Questions. Buchwald Home Occupation CU Permit, No. 181-12-13 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Apr. 1, 2014) (Walsh, J.). We may, however, deny a motion to amend if there "has been undue delay or bad faith by the moving party, [if] the amendment will prejudice other parties, [or if] the amendment is futile." Id. (citing Colby, 2008 VT 20, ¶ 4). We may also deny a motion on grounds of prejudice, "for example, where a motion to amend [is] submitted after trial, after a statement of questions [has] already been amended, or after a motion for summary judgment [has been] denied." In re All Metals Recycling, Inc. Discretionary Permit Application, No. 171-11-11 Vtec, slip op. at 10 (Vt. Super. Ct. Envtl. Div. Apr. 23, 2012) (Walsh, J.). Since the motion to amend here, by its express terms, is a response to the Applicant's motion to dismiss, the Court will evaluate the proposed amendments in conjunction with its review of the remaining aspects of Applicant's motion to dismiss (or clarify) to determine whether the proposed amendments are sufficient to cure the alleged deficiencies in the Questions raised, and/or provide sufficient clarity to put Applicant, ANR and the Court on notice regarding the issues Appellants seek to adjudicate in this appeal.

### a. Questions 13 and 15

---

[15] In its October 24, 2025 Reply filing, Applicant identifies additional questions (i.e., Questions 3, 9, 10, 11, 16, 18) about which it contends Appellants failed to comment (or adequately and specifically comment) to ANR. For the same reasons as the above-referenced Questions, and because Applicant makes this argument for the first time in a Reply filing (and not by separate motion filed under V.R.C.P. 7(b)), the Court declines to consider it at this time.

As a preliminary matter, Appellants' motion to amend withdraws their original Questions 13 and 15. No party objects and, therefore, Questions 13 and 15 are **WITHDRAWN** and Applicant's motion to dismiss as it relates to those questions is **MOOT.**

### b. Questions 5 and 6

Applicant moves to dismiss Questions 5 and 6 as improper under the Court's de novo hearing standard of review, as discussed above. Appellant seeks amendment of these same Questions.

Original Question 5 states: "Whether the WQCs condition requiring post-certification development of a recreation plan is an unlawful condition subsequent, and whether a condition relying on a recreation plan that does not yet exist will assure the applicant's compliance with VWQS and other appropriate requirements of state law regarding recreational uses."

Original Question 6 states: "Whether the WQCs condition requiring post-certification development of a recreation plan circumvents the public's right to notice and comment under the CWA and federal and state law implementing the CWA."[16]

The Court agrees that these questions, as stated, are not consistent with this Court's de novo hearing standard because they ask the Court to evaluate the correctness of a condition regarding recreation plan development imposed by ANR, rather than asking the Court to consider anew the propriety of granting the certifications subject to any particular condition(s). As stated, Question 6 also appears to assert third-party standing on behalf of others, which is generally disallowed. Baird v. City of Burlington, 2016 VT 6, ¶ 15; see also Warth v. Sending, 422 U.S. 490,499 (1975) (explaining that a litigant "cannot rest his claim to relief on the legal rights or interests of third parties."). While Appellants' proposed amendments contain citations to regulations/laws they assert are applicable to the issues raised in Questions 5 and 6, the amendments do not rectify these standard of review issues. Because the Court believes it is possible to raise the issues within these Questions in a manner that does not offend the de novo standard of review in this matter, and potentially falls within the bounds of Appellants' standing, the Court **DENIES** Applicant's motion to dismiss Questions 5 and 6 but **GRANTS** its motion to clarify the same. Appellants shall have 14 days from the date of this decision to further revise and clarify Questions 5 and 6 to reflect this Court's de novo hearing standard and, as further discussed below, to cite to any other specific provisions of the VWQS (or other requirements of law) that they believe regulate the subject of these Questions (and that are at issue).

### c. Questions 3–12, 14, and 16–18

---

[16] Appellant has proposed to amend Questions 5 and 6, primarily by adding citations/references to the VWQS, but the fundamental Questions remain unchanged.

Applicant also moves to dismiss Questions 3 through 12, 14, and 16 through 18 pursuant to V.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The standard of review for such a motion is set forth above.

While framed as a motion to dismiss under Rule 12(b)(6), Applicant principally argues throughout its motion that the referenced Questions fail to include specific citations to provisions of the VWQS that give rise to Appellants' asserted claim(s). As a result, Applicant further contends that these Questions are insufficiently clear. Because the motion functionally argues a lack of clarity in these Questions, the Court construes these arguments primarily as a motion to clarify questions under V.R.E.C.P. 5(f), which the Applicant seeks as an alternative to dismissal.

We will direct a party to clarify its questions under our Rule 5(f) when necessary to ensure that "the claims have enough specificity to notify the opposing party and the court of the issues on appeal." In re Atwood Planned Unit Dev., 2017 VT 16, ¶ 14 (citation omitted); In re Couture Subdivision Permit, No. 53-4-14 Vtec, slip op. at 2-3 (Vt. Super. Ct. Envtl. Div. July 17, 2015) (Durkin, J.) (dismissing a question that did not reference any specific provisions, just the applicable regulations generally). The Statement of Questions, however, is not a mechanism to argue one's claims. In re Conlon CU Permit, No. 2-1-12 Vtec, slip op. at 1 (Vt. Super Ct. Envtl. Div. Aug. 30, 2012) (Durkin, J.). With this framework in mind, we turn to Appellants' questions, both as originally filed and proposed for amendment, to determine whether they satisfy the requisite standards.

The Court could individually address each of Appellants Questions, as originally proposed and as amended, but finds it unnecessary to undertake a lengthy and likely redundant analysis. It is sufficient to state that most, if not all of Appellants' Questions as originally proposed were unreasonably vague because they were almost completely devoid of citations to the VWQS or other specific provisions of law, and many of the Questions did not comport with our de novo hearing standard. Therefore, to the extent that Applicant has moved to dismiss or clarify those original Questions, the Court agrees that while outright dismissal is not warranted currently, further clarification is appropriate and Applicant's request for such clarification is **GRANTED.**

Appellants have proposed to amend their Statement of Questions by adding citations to the VWQS and other statutory or regulatory provisions, thereby providing or attempting to provide further clarification. Some of these citations are specific and provide reasonable notice of the issues that Appellants seek to raise. For example, some Questions as amended contain citations to discrete standards of review or provisions of the VWQS that they seek adjudication of in this appeal. The Court appreciates Appellants' attempts to clarify the scope of the issues on appeal. This does not

change the fact, however, that most if not all of Appellants' amended Questions also contain overly broad citations to the VWQS (or other statutory or regulatory provisions) and/or "catch-all" language that does not provide reasonable notice of the issues that Appellants seek to raise. Examples of this linguistic practice consist of: 1) repeated use of the word "including," which implies that other legal provisions may be relevant to the Question; 2) references to "appropriate requirements of law" without any further indication of what those are or how they apply; 3) citations to provisions of the VWQS that are multiple paragraphs or pages long, such as the antidegradation policy; 4) citations to general criteria applicable to all waters, and 5) citations to entire statutory chapters or subchapters (e.g., "subchapter 3" or "10 V.S.A. Ch. 123"). Further, many of Appellants' Questions, as proposed for amendment, continue to focus on the proceedings below and are not consistent with our de novo hearing standard of review.[17]

Accordingly, Appellants' Motion to Amend their Statement of Questions is **GRANTED IN PART** and **DENIED IN PART** for these reasons. While providing some clarity as compared to the original Questions, the amendments do not sufficiently cure existing deficiencies. At the same time, the Court recognizes that Appellants have provided some Questions and regulatory provisions that are highly likely to be properly before the Court and sufficiently raised as amended. As such, the Court does not conclude that general amendments to the Questions would be futile at this time and does not intend to prematurely foreclose Appellants' ability to seek adjudication of the issues that they have properly raised through their first attempted amendment. Appellants shall have 14 days from the date of this decision to further amend their Statement of Questions to provide more specific citations, without "catch all" language, as described above. If Appellants' further amended Statement of Questions contains "catch all" or similarly broad language or citations, the Court will not consider it. The Court will then evaluate the certification applications de novo, under only those provisions of the VWQS (or other regulatory provisions) that Appellants have specifically cited. Appellants are further directed to avoid propounding duplicative Questions to the extent they presently exist.

### d. **Questions 8 and 16**

In its motion to dismiss, Applicant argues, *inter alia*, that this Court has no jurisdiction over the so-called Fish Passage Agreement (the Agreement) entered into between certain State and federal fish and wildlife authorities and Applicant, and that Questions 8 and 16 (which potentially implicate

---

[17] For example, proposed amended Question 8 references facts and circumstances "as anticipated in the WQCs" which constitute legal argument and that are not consistent with our de novo hearing standard. Multiple other questions contain references to certification conditions that (presumably) are presently on appeal.

that Agreement) should be dismissed. The Court agrees that it has no jurisdiction over the Agreement, or over any Memorandum of Understanding (MOU) referenced therein. Those agreements and the enforcement thereof are matters outside the scope of this Court's jurisdiction. In re DJK LLC, WW & WS Permit, 2024 VT 34, ¶ 25 ("The Environmental Division is a court of limited jurisdiction"); 4 V.S.A. § 31. However, the existence of the Fish Passage Agreement and its contents, as well as any related MOU, are facts that may be relevant to issues properly raised by Appellants on appeal. It is premature to determine whether and how those documents may be relevant to the Court's analysis, particularly given that Appellants may further amend their Statement of Questions as set forth herein. The Court is disinclined to dismiss Questions 8 and 16 at this time based solely on its lack of authority over the agreements. Applicant's motion to dismiss on that basis is **DENIED**. No aspect of this decision should be construed as a conclusion of this Court that it can definitively adjudicate issues related to these Questions; rather, the Court is reserving judgment on that matter pending additional clarification.

Further, Applicant argues that Questions 8 and 16, as well as numerous other Questions, are duplicative and that certain Questions should be dismissed on that basis. Again, it is premature to evaluate whether any duplication of Questions exists until Appellants have had the opportunity to further amend their Statement of Questions. To the extent that Questions address the same issues, or broadly stated Questions are duplicative of the more precise issues raised by other Questions, the Court has the ability, if necessary, to combine or eliminate Questions to provide for efficient evaluation of the issues raised without unnecessary duplication or redundancy. Given that Appellants are still working to articulate and clarify their issues, however, and they have been directed to avoid duplication in this process, it is too soon to undertake that task. Therefore, Applicant's motion to dismiss for reasons of duplication is **DENIED** at this time.

<u>Conclusion</u>

For the foregoing reasons, Applicant's motion to dismiss Questions 1 and 2 is **GRANTED**. Applicants' motion to dismiss the remaining Questions is **DENIED**. Its motion for clarification is, however, **GRANTED** and Appellants are directed to file their further clarified Questions pursuant to the guidance set forth herein. Similarly, Appellants' motion to amend their Statement of Questions is **GRANTED IN PART** and **DENIED IN PART**, as provided herein. Appellants must submit their further-clarified Statement of Questions within 14 days of the date of this decision. In so concluding, the Court notes that Questions 13 and 15 have been **WITHDRAWN**.

Electronically signed on December 4, 2025, pursuant to V.R.E.F. 9(d).

Joseph S. McLean
Superior Court Judge
Environmental Division